# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2014

Lyle W. Cayce
Clerk

No. 13-40328

SANDRA KAY GILBERT,

Plaintiff–Appellant,

v.

PATRICK R. DONAHOE, Postmaster General, United States Postal Service,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Sandra Kay Gilbert appeals the district court's dismissal of her complaint for lack of subject matter jurisdiction. We conclude that the collective bargaining agreement between the union of which Gilbert was a member and the United States Postal Service did not clearly and unmistakably require Gilbert to resolve claims arising under the Family and Medical Leave Act through arbitration. However, we agree with the district court that the agreement's incorporation of the Rehabilitation Act was sufficiently clear and unmistakable to waive Gilbert's right to bring claims under that statute in federal court. We further conclude that Gilbert no longer has standing to seek injunctive relief, since she has retired. Accordingly, we affirm in part, reverse in part, and remand.

No. 13-40328

## I

Plaintiff Sandra Kay Gilbert is a former employee of the United States Postal Service (USPS), and this case arises out of events that occurred during her employment. Following a "due process" interview regarding her practice of taking leave during USPS's busy seasons, Gilbert initiated an Equal Employment Opportunity (EEO) complaint, alleging that the interview constituted age and disability discrimination. Shortly thereafter, Gilbert sought paid sick leave in order to care for her husband (the first leave request). USPS temporarily denied Gilbert's claim. Although she was eventually granted paid leave, Gilbert filed an internal grievance with USPS according to the terms set forth in the collective bargaining agreement (CBA) between the American Postal Workers Union (Union) and USPS. She also amended her EEO complaint, claiming that the interview and the temporary denial of paid leave constituted retaliation. USPS's regional postmaster denied Gilbert's grievance, finding that management had acted in accordance with its handbooks and the CBA. USPS's EEO Services Analyst also dismissed Gilbert's complaint on the ground that the allegations of discrimination were moot and that Gilbert had failed to state a claim.

After these decisions were issued, Gilbert filed suit against Patrick R. Donahoe, in his capacity as USPS Postmaster General. Gilbert alleged that USPS interfered with her rights under the Family and Medical Leave Act (FMLA). Concurrently, the Union, acting on Gilbert's behalf, appealed the local postmaster's dismissal of Gilbert's grievance to an arbitrator, in accordance with the procedures in the CBA. Gilbert also appealed the EEO decision to the Equal Employment Opportunity Commission (EEOC). The EEOC dismissed the appeal, however, because Gilbert had filed suit.

Donahoe moved to dismiss Gilbert's lawsuit on the ground that the district court lacked subject matter jurisdiction. Donahoe reasoned that,

2

No. 13-40328

because the CBA provides that its mandatory grievance procedure is the exclusive method of resolving claims under the FMLA, Gilbert could not bring her claims in federal court. While Donahoe's motion was pending, another leave dispute arose. Gilbert sought paid sick leave for two days and presented a physician's note to her supervisor (the second leave request). Finding the note insufficiently specific under the terms of the CBA, Gilbert's supervisor designated her absence as "leave without pay."

After this incident, Gilbert amended her complaint to add claims under the Rehabilitation Act. Donahoe then filed an amended motion to dismiss, asserting the same jurisdictional arguments as before and additionally contending that Gilbert had failed to state a claim for which relief could be granted. The district court ordered the parties to conduct discovery prior to ruling on Donahoe's motion to dismiss. Following discovery, Donahoe filed another amended motion to dismiss, or alternatively, for summary judgment. This motion offered various grounds for dismissal and summary judgment, but did not re-assert the initial argument that the CBA's grievance procedure deprived the court of subject matter jurisdiction. Nonetheless, the district court issued a Notice of Intent to Dismiss, requesting that the parties brief the issue of whether the CBA precluded subject matter jurisdiction. Following briefing, the district court dismissed the case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The court concluded that the CBA contains a mandatory grievance procedure and clearly and unmistakably requires Gilbert to resolve her statutory claims through that procedure.

Shortly after the dismissal, Gilbert retired from USPS. Nonetheless, she timely appealed the court's order. In his brief, Donahoe states that he is "abandon[ing] the specific grounds underlying the [district court's] dismissal." He contends, however, that this court should affirm the dismissal because

3

No. 13-40328

subject matter jurisdiction is lacking for other reasons, Gilbert has failed to state a claim, and there is no genuine dispute as to a material fact.

## II

We have held that a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration.[1] We review such a dismissal "de novo, using the same standard as the district court."[2] Under that standard, "[t]he burden of proof for a 12(b)(1) motion to dismiss is on the party asserting jurisdiction."[3] In order to bear that burden, the party "must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence."[4] However, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[5] Although Donahoe has abandoned the view that the CBA deprives the district court of jurisdiction, we must examine the issue,

---

[1] *See Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781, 787 (5th Cir. 2012); *see also Omni Pinnacle, LLC v. ECC Operating Servs., Inc.*, 255 F. App'x 24, 26 (5th Cir. 2007) (affirming the district court's order dismissing case pursuant to Rule 12(b)(1) on the ground that agreement between parties required arbitration of dispute). *But see Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) (stating that "[o]ur court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause," but declining to decide the issue).

[2] *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008).

[3] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[4] *Ballew*, 668 F.3d at 781.

[5] *Ramming*, 281 F.3d at 161.

since parties may not agree to confer subject matter jurisdiction that Congress has withheld, and an appellee's concession is not binding on this court.[6]

### III

In *14 Penn Plaza LLC v. Pyett*,[7] the Supreme Court held that, in the absence of statutory language to the contrary, a union may agree with an employer to submit employees' statutory claims exclusively to arbitration or another non-judicial grievance procedure.[8]  In order for that agreement to be enforceable, however, the CBA must "clearly and unmistakably require[] union members" to submit their statutory claims to those procedures.[9]  In *Penn Plaza*, for instance, the CBA contained the following clause:

> There shall be no discrimination against any present or future employee by reason of race, creed, . . . or any other characteristic protected by law, including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act [ADEA], the New York State Human Rights Law, . . . or any other similar laws, rules, or regulations.  All such claims shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.[10]

The Supreme Court determined that this provision was likely sufficiently clear and unmistakable to bar employees from bringing their ADEA and state-law

---

[6] *See, e.g.*, *United States v. Hope*, 545 F.3d 293, 295 (5th Cir. 2008) (court of appeals is not bound by appellee's concession); *Buchner v. FDIC*, 981 F.3d 816, 818 (5th Cir. 1993) ("Although parties may waive their rights to remove a case or to contest the removal procedure, they may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver."); *Warren G. Kleban Eng'g Corp. v. Caldwell*, 490 F.2d 800, 803 n.2 (5th Cir. 1974) ("It is settled law that the parties may not, by silence or agreement, confer upon the federal courts that jurisdiction which Congress has withheld.").

[7] 556 U.S. 247 (2009).

[8] *Penn Plaza*, 556 U.S. at 256-58, 274; *see also Ibarra v. United Parcel Serv.*, 695 F.3d 354, 356 (5th Cir. 2012).

[9] *Penn Plaza*, 556 U.S. at 274.

[10] *Id.* at 252.

claims in federal court.[11]  In reaching this conclusion, the Court distinguished the provision from those at issue in prior cases.[12]  In *Alexander v. Gardner-Denver Co.*,[13] for instance, the CBA provided a grievance procedure for all "'differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this Agreement' and 'any trouble aris[ing] in the plant.'"[14]  Similarly, in *Barrentine v. Arkansas-Best Freight System, Inc.*,[15] the CBA provided:

> [T]here shall be no strikes, lockouts, tieups, or legal proceedings without first using all possible means of settlement as provided for in this Agreement and in the National Agreement, if applicable, of any controversy which might arise.  Disputes shall first be taken up between the Employer and the Local Union involved.  Failing adjustment by these parties, [the dispute shall be resolved by a State or Multiple State Committee].[16]

Reviewing these cases, the *Penn Plaza* Court held that these provisions "did not expressly reference the statutory claim at issue" and therefore did not prevent the employees from bringing those claims in federal court.[17]

The Court also implicitly concluded that the arbitration provision was distinct from that at issue in *Wright v. Universal Maritime Service Corp.*[18]  The CBA in that case provided that "[m]atters under dispute which cannot be promptly settled between the Local and an individual Employer shall . . . be

---

[11] *Id.* at 260.

[12] *Id.* at 260-64.

[13] 415 U.S. 36 (1974).

[14] *Penn Plaza*, 556 U.S. at 261 (alterations in original) (quoting *Gardner-Denver*, 415 U.S. at 40-41).

[15] 450 U.S. 728 (1981).

[16] *Barrentine*, 450 U.S. at 731 n.5.

[17] *Penn Plaza*, 556 U.S. at 263-64.

[18] 525 U.S. 70 (1998).

referred" to a specific grievance process and that "[t]he Union agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment . . . ."[19]  Holding that these provisions did not bar employees from bringing claims under the Americans with Disabilities Act (ADA) in federal court, *Wright* observed, "[The CBA's] arbitration clause is very general, providing for arbitration of '[m]atters under dispute,' which could be understood to mean matters in dispute under the contract.   And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements."[20]

We applied *Penn Plaza*'s "clear and unmistakable" test in *Ibarra v. United Parcel Service*.[21]  In that case, one provision of the CBA provided that "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement" shall be submitted to a specified grievance procedure.[22]  A separate, non-discrimination provision stated:

> The Employer and the Union agree not to discriminate against any individual . . . because of such individual's race, . . . or age in violation of any federal or state law, or engage in any other discriminatory acts prohibited by law . . . . This Article . . . covers employees with a qualified disability under the [ADA].[23]

We held that these provisions did not require an employee to submit her Title VII claim to the grievance process.[24]  We noted that "for a waiver of an

---

[19] *Wright*, 525 U.S. at 72-73.

[20] *Id.* at 80 (citation omitted).

[21] 695 F.3d 354 (5th Cir. 2012).

[22] *Ibarra*, 695 F.3d at 356-57.

[23] *Id.* at 357.

[24] *Id.* at 360.

employee's right to a judicial forum for statutory discrimination claims to be clear and unmistakable, the CBA must, at the very least, identify the specific statutes the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims."[25]

Article 15 of the CBA at issue in this case addresses grievances. Section 15.01 provides:

> A. A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement . . . .

Section 15.02 sets out the grievance procedure and provides:

> A. Step 1
> The employee must discuss a grievance with the immediate supervisor within fourteen (14) days of when the employee or Union has learned or may reasonably have been expected to have learned of its cause.

Section 15.03(C), in turn, states:

> The failure of the aggrieved party or the Union to present the grievance within the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered as a waiver of the grievance.

Lastly, Section 15.04(D) provides that, if the grievance ultimately proceeds to arbitration, "[t]he arbitrator's decision will be final and binding."

---

[25] *Id.* at 359-60; *see also Anglin v. Ceres Gulf Inc.*, 503 F. App'x 254, 255 (5th Cir. 2012) (noting that if a memorandum of understanding (MOU) between the union and employer had bound the employee, the employee would not have been able to bring her statutory claims in federal court because "[t]he MOU specifically identifie[d] Title VII, indicating *inter alia* that complaints brought under that statute are subject to the CBA's grievance and arbitration provisions").

The district court first held that these provisions created a mandatory grievance procedure. It reasoned that Section 15.02, when combined with Section 15.03(C), required that employees submit claims according to specified time limits or waive those claims entirely. The court then addressed whether the CBA clearly and unmistakably required Gilbert to submit her statutory claims to that procedure. It recognized that Article 15 does "not specifically identify either the FMLA or the Rehabilitation Act nor do[es it] explicitly state that the grievance and arbitration procedures are the sole and exclusive remedy." Nonetheless, the court held, provisions elsewhere in the CBA incorporated both the FMLA and the Rehabilitation Act into the agreement. Specifically, the court pointed to Section 2.01(B), which provides that, "consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act." As for the FMLA, the court pointed to the Employee and Labor Relations Manual (ELM), which is incorporated into the CBA. Section 515 of the ELM states that it "provides policies to comply with the [FMLA]." "Thus," the district court held, "the CBA identifies the specific statute[s] it purports to incorporate" and therefore "clearly and unmistakably" requires employees to submit their claims under those statutes to the specified grievance procedure.

On appeal, Gilbert does not challenge the district court's conclusion that the grievance procedure is mandatory. Any such challenge, moreover, would be of little merit. Irrespective of whether the grievance procedure was initially mandatory, Gilbert, through her union, elected to proceed to arbitration, and the CBA, as just mentioned, specifically states that the arbitrator's decision shall be "final and binding."

Gilbert does, however, assert that the district court erred in concluding that the CBA clearly and unmistakably requires her to submit her FMLA and

Rehabilitation Act claims to arbitration. We agree, in part. The CBA in this case falls in between that at issue in *Penn Plaza* and those this court and the Supreme Court have deemed insufficiently clear and unmistakable. Like the dispute-resolution provisions in *Ibarra, Wright, Gardner-Denver,* and *Barrentine*, Article 15 makes no explicit reference to statutory claims, let alone claims under the FMLA or the Rehabilitation Act. However, unlike in those cases, other provisions of the CBA do specifically identify both the FMLA and the Rehabilitation Act.

Nonetheless, the ways in which the agreement identifies the respective statutes are distinct, and this difference guides our resolution of this case. Section 2.01(B) of the CBA specifically provides that it is incorporating into the agreement the prohibition of discrimination against handicapped employees contained in the Rehabilitation Act. It thus complies with the dicta of both *Ibarra* and *Wright* that the CBA "identify the specific statutes the agreement purports to incorporate."[26] Combined with Article 15, this provision makes it clear and unmistakable that the Rehabilitation Act is part of the CBA and subject to the same grievance procedures. By contrast, the ELM only provides policies to comply with the FMLA. It does not purport to make the FMLA a part of the agreement. As our sister circuits have recognized, references to statutes that fall short of incorporation are insufficiently "clear and unmistakable" to bar access to federal court.[27] There is no reason to treat this reference any differently. Accordingly, we hold that, while the CBA requires Gilbert to pursue her Rehabilitation Act claims through the specified grievance

---

[26] *Ibarra*, 695 F.3d at 359-60; *see also Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 81 (1998) (implying that CBA would be clear and unmistakable if it "ma[de] compliance with the ADA a contractual commitment that would be subject to the arbitration clause").

[27] *See, e.g., Powell v. Anheuser-Busch Inc.*, 457 F. App'x 679, 679 (9th Cir. 2011); *Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319, 320, 323 (4th Cir. 1999).

and arbitration procedures, its references to the FMLA are not sufficiently clear and unmistakable to deprive the district court of subject matter jurisdiction over claims arising under that statute.

## IV

Although he abandons the reasoning relied upon by the district court, Donahoe urges this court to affirm the dismissal of Gilbert's claims on various other grounds, including lack of subject matter jurisdiction.   Under our precedent, we may "affirm on any ground supported by the record, including one not reached by the district court."[28]  This is so even if neither the appellant nor the district court addressed the ground, so long as the argument was raised below.[29]

Donahoe first argues that the district court lacked subject matter jurisdiction because the FMLA does not provide for paid leave.  As a result, Gilbert's claims can only sound in contract, over which the district court would not have jurisdiction.  This argument confuses failure to state a claim with lack of subject matter jurisdiction.  28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[30]  "The well-pleaded-complaint rule has long governed whether a case 'arises under' federal law for purposes of § 1331."[31]  Under this rule, a claim arises under federal law "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law] or th[e] Constitution."[32]  Accordingly, "jurisdiction is not defeated

---

[28] *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012).

[29] *See R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 811 (5th Cir. 2012).

[30] 28 U.S.C. § 1331.

[31] *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

[32] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

No. 13-40328

by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."[33]  Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."[34]

In this case, Gilbert has alleged that Donahoe violated the FMLA by threatening her and denying her benefits in order to interfere with her exercise of her FMLA rights and to retaliate against her for exercising those rights.  As the FMLA protects against both retaliation and interference,[35] one cannot say that her claim is so "completely devoid of merit as not to involve a federal controversy."

Donahoe's second contention regarding subject matter jurisdiction is also largely unavailing.  He asserts that Gilbert lacks standing to bring claims under the FMLA for a host of reasons.  First, Donahoe asserts that Gilbert lacks injury because she was ultimately paid for the time that she was on FMLA leave and the statute does not entitle her to receive any additional compensation.  Second, Donahoe argues that Gilbert's claims regarding the second leave dispute do not concern the FMLA because she did not request FMLA leave in that instance.  Third, Donahoe contends that Gilbert failed to provide any documentation regarding the extent of her damages and, even if she proved damages, they would not provide redress, as any award would be offset by the more than $15,000 Gilbert received in retirement benefits.

---

[33] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (alterations omitted).

[34] *Id.* (internal quotation marks omitted).

[35] *See* 29 U.S.C. § 2615(a)(1); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 258 (5th Cir. 2009).

12

No. 13-40328

Fourth, Donahoe asserts that Gilbert lacks standing to seek an injunction because she has retired.

In order to establish standing, a "plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[36] As the Supreme Court has explained, "the critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction."[37] As with subject matter jurisdiction generally, the plaintiff need not demonstrate that she is actually entitled to relief. She need only provide sufficient facts, which, if taken as true, establish an injury at the hands of the defendant that could be redressed by an order of this court.[38]

Gilbert readily meets the first prong of this inquiry. She has alleged that USPS's actions, including the allegedly harassing interview, the temporary denial of the first leave request, and the complete denial of the second request, constituted interference with her rights under the FMLA and retaliation for exercising and attempting to exercise those rights. These are concrete, particularized, and actual injuries.[39] That USPS ultimately paid Gilbert for

---

[36] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[37] *Horne v. Flores*, 557 U.S. 433, 445 (2009) (emphasis and internal quotation marks omitted).

[38] *See Lujan*, 504 U.S. at 561.

[39] *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (noting that "Nike had standing to sue because Already's activity was allegedly infringing its rights under trademark law" and that "Already had standing to file its counterclaim because Nike was allegedly pressing an invalid trademark to halt Already's legitimate business activity").

the first absence is of no moment, since Gilbert claims injuries that this payment did not redress, including the interest she lost as a result of the delay, and the complete refusal to pay in response to the second request. Nor is it relevant that the FMLA may not ultimately allow her to recover for those injuries. As discussed above, that contention concerns whether Gilbert has stated a claim for which relief can be granted, not subject matter jurisdiction. Furthermore, Donahoe has cited no authority to support his claim that Gilbert lacks injury because she failed to provide a computation of damages.

Gilbert's injuries, moreover, are traceable to the actions of the defendant, since Donahoe, as Postmaster General, has the ability to stop his employees from taking the actions alleged. Lastly, with the exception of Gilbert's claims for injunctive relief, her injuries are redressable. Damages in the form of back-pay for the second absence and interest for the delay attending the first request would redress Gilbert's injuries. That USPS is paying Gilbert more than $15,000 in retirement benefits does not render her injuries unredressable. As Donahoe points out, this court has previously held that "[a]n employer's portion of retirement and other payments made to a terminated employee must be deducted from an award of lost wages and benefits in" FMLA cases.[40] However, we have only reached this conclusion in one case and that matter involved wrongful termination.[41] This case, by contrast, concerns the alleged denial of paid leave and harassment. The difference is material because the purpose of the offset is to avoid windfalls, and awarding Gilbert damages for lost interest and denied leave would not provide her with a windfall.[42] Thus,

---

[40] *Lubke v. City of Arlington*, 455 F.3d 489, 499-500 (5th Cir. 2006).

[41] *See id.*

[42] *See Stephens v. C.I.T. Grp./Equip. Fin., Inc.*, 955 F.2d 1023, 1028 (5th Cir. 1992).

No. 13-40328

it is by no means certain that this court would require offset.  Accordingly, it is likely that a judgment in her favor would redress Gilbert's injuries.

Nonetheless, Gilbert's retirement did destroy her standing to bring claims for injunctive relief.  The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation."[43]  Additionally, "a plaintiff must demonstrate standing separately for each form of relief sought."[44]  In order to obtain an injunction, a plaintiff must demonstrate that she "face[s] a realistic threat" of the defendant's policy harming her in the future.[45]  As Gilbert is no longer an employee of USPS, she does not realistically face a threat that Donahoe's employees will continue to violate her rights under the FMLA.  Thus, she does not have standing to seek an injunction.

In view of these considerations, we hold that, with the exception of Gilbert's claims for injunctive relief, the district court possesses subject matter jurisdiction over Gilbert's FMLA claims.

## V

Donahoe also urges this court to affirm the district court's dismissal of Gilbert's complaint on the ground that she failed to state a cause of action and there is no genuine dispute as to a material fact.  "Although this court may decide a case on any ground that was presented to the trial court, we are not required to do so."[46]  We elect not to examine whether Gilbert has failed to state a claim or the propriety of summary judgment, as the district court has not had occasion to consider these contentions.

---

[43] *Already*, 133 S. Ct. at 726 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).

[44] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[45] *Id.* at 184 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 106 n.7 (1983)).

[46] *Breaux v. Dilsaver*, 254 F.3d 533, 538 (5th Cir. 2001).

15

No. 13-40328

\*     \*     \*

For the foregoing reasons, the district court's dismissal of Gilbert's claims arising under the Rehabilitation Act and her claims for injunctive relief is AFFIRMED. However, the court's dismissal of her claims for damages under the FMLA for lack of subject matter jurisdiction is REVERSED. This case is REMANDED for further proceedings consistent with this opinion.