# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2023

Lyle W. Cayce
Clerk

No. 21-11134

Raul Garcia,

*Plaintiff—Appellant*,

*versus*

City of Lubbock, Texas; Lubbock County, Texas; Mark Ellison; Joshua Conklin; Paul Cartwright; Christopher Mendez; Natalie Ybarra; M. Monzingo; Cleadon S. Bigham; Monica Lopez; Kelly Rowe; Dustin Hood; Laura Maldonado; Christopher Martinez,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:20-CV-53

Before Stewart, Dennis, and Higginson, *Circuit Judges*.

Per Curiam:*

Raul Garcia appeals the district court's dismissal of his claims against numerous police officers and jail staff involved in his arrest and subsequent booking in Lubbock County ("the County") jail. He sufficiently alleged an

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-11134

unconstitutional practice which demonstrates deliberate indifference under a failure-to-train theory by Sheriff Rowe, so we REVERSE the district court's grant of qualified immunity as to him. Regarding the remaining police officers and jail staff, Garcia's pleadings either fail to state a claim or they do not defeat qualified immunity. Therefore, we AFFIRM the district court's dismissal of these parties.

Garcia also appeals the district court's summary judgment in favor of the County for alleged constitutional and Americans with Disabilities Act ("ADA") violations. Because he does not create a genuine dispute of material fact on these claims, we AFFIRM.

## I.  BACKGROUND

### A.  *Garcia's Arrest*

On May 18, 2018, the Lubbock Police Department ("LPD") received a call from a United Supermarket reporting that a customer refused to leave. LPD Officers Mark Ellison and Joshua Conklin were sent to the scene. They arrived at the supermarket and found the store manager and Garcia standing outside in the entryway. Officer Ellison talked to the store manager to get his account of the events that had taken place while Officer Conklin engaged Garcia.

Officer Conklin first asked Garcia if anyone could come pick him up or if he drove himself to the supermarket. He was unresponsive. He then asked Garcia where he lived, to which he stated, "down the street." Garcia was in a fatigued state throughout the discussion but was able to tell Officer Conklin that he knew he was at a United Supermarket, although he was wrong about the specific location. Officer Ellison asked him how much he had to drink. He did not respond directly to Officer Ellison's question, instead only nodding and shaking his head.

After questioning Garcia for some time and not receiving clear answers, the officers placed him in handcuffs. Officer Ellison's body-camera footage shows that Garcia was wearing two silicone wristbands when he was handcuffed, but it is unclear whether there were any words on the wristbands or some other indicator that the bracelets were designed to alert others to a medical condition that Garcia suffered from. While Garcia was cuffed, the officers continued to question him and he was able to provide his full name and date of birth. Before placing him in their vehicle, the officers again asked if there was anyone that they could call to pick him up. He did not respond.

Because the officers could not call anyone to pick Garcia up, Officer Ellison transported him to the Lubbock County Detention Center (the "LCDC"). Officer Ellison testified that, on the way to the detention center, Garcia fell asleep and had to be woken up. When they arrived, Officer Ellison called for assistance in removing him from the vehicle because he was uncooperative. The LCDC Response Team assisted him out of the vehicle and escorted him to a processing cell. Members of the LCDC staff testified that he appeared intoxicated, slurred his speech, and was unsteady on his feet. Sergeant Cartwright decided to temporarily bypass medical screening because he thought Garcia needed to sober up before he could answer the screening questions.

### B.    *Garcia's Processing Following His Arrest*

After delivering Garcia to LCDC, Officer Ellison completed the arrest intake form and indicated that he did not believe that Garcia was at risk due to a medical condition. The form also indicated that Garcia was offered medical assistance but declined it. Laura Maldonado booked Garcia into the jail. After the booking process, he was placed in a processing cell, patted down, and was uncuffed. Maldonado then catalogued his property, but never included any medical bracelets in the inventory of his belongings.

No. 21-11134

Garcia was subsequently placed in his cell under close watch protocol, with LCDC staff Cleadon S. Bigham and Monica Lopez responsible for checking on him every fifteen minutes. After almost three hours, they discovered Garcia lying on his stomach and snoring loudly. Bigham stated that he and Sergeant Dustin Hood rolled him onto his side and called for medical assistance. Both medical staff and detention officers attempted to wake him, but he remained unresponsive. Emergency medical services were called, and he was transported to University Medical Center ("UMC").

UMC diagnosed Garcia with diabetic ketoacidosis, a life-threatening complication of diabetes. Lab tests at UMC confirmed that no alcohol or narcotics were present in his system. Garcia now alleges that he suffered complications and permanent effects because the County and its employees failed to treat his condition. He sued all parties involved in his arrest and jail booking.

## C.    *District Court Proceedings*

Garcia filed his Original Complaint on March 6, 2020. He alleged numerous civil rights violations under 42 U.S.C. § 1983. On April 2, 2020, the County, Sheriff Kelly Rowe, Sergeant Hood, and the jail employees (except Bigham, Mendez, and Lopez) moved to dismiss Garcia's claims against them under Rule 12(b)(6). Bigham, Mendez, and Lopez later filed separate motions to dismiss on the same grounds. Officers Conklin and Ellison did not move to dismiss the claims against them, instead asserting the affirmative defense of qualified immunity. The district court granted all of the motions and dismissed Garcia's suit with prejudice, but granted him leave to amend his failure-to-train claims against Rowe and Hood.[1]

---

[1] Garcia never amended his failure-to-train claims against Rowe and Hood.

The City of Lubbock ("the City") and the County both moved for summary judgment and the district court granted their motions. Regarding the City, the district court reasoned that Garcia failed to raise a genuine dispute of material fact that: (1) there was a constitutional violation; (2) the officers acted with deliberate indifference; and (3) there was an official policy in place that resulted in a constitutional violation.

As to the County, the district court held that Garcia failed to raise a genuine dispute of material fact that: (1) there was an official policy that resulted in a constitutional violation; (2) the detention officers were deliberately indifferent; (3) the officers were not adequately trained; or (4) the detention officers were aware of his medical condition prior to calling for emergency medical assistance.  Garcia timely appealed.

On appeal Garcia argues that the district erred in dismissing Rowe, Hood, Bigham, Mendez, Lopez, and the other individual employees under Rule 12(b)(6) and on qualified immunity grounds. He also asks that we reconsider the district court's summary judgment in favor of the County.[2]

## II.   STANDARDS OF REVIEW

### A.    *Motion to Dismiss*

We review dismissals under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

---

[2] Garcia does not appeal the district court's summary judgment for the City, instead choosing only to pursue his claim against the County.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    *Summary Judgment*

"We review grants of summary judgment de novo, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).

"All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *La. Crawfish Producers*, 852 F.3d at 462. We may affirm "on any ground supported by the record, including one not reached by the district court." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (internal quotations and citation omitted).

## III.  Discussion

### A.    *Defendants Dismissed Under Rule 12(b)(6) & Qualified Immunity*

The district court dismissed numerous defendants at the pleading stage, reasoning that Garcia either failed to state a claim or did not defeat the qualified immunity defense as to each defendant. Garcia argues that the district court's determinations were erroneous. We disagree.

"The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 955 F.3d 501, 506 (5th Cir. 2020). To succeed on a deliberate indifference claim, a plaintiff must demonstrate that: "(1) the official was 'aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Id.* (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). We have recognized that "[d]eliberate indifference is an extremely high standard to meet." *Domino*, 239 F.3d at 756.

### 1.     *Qualified Immunity*

Garcia challenges the district court's dismissals of Rowe, Hood, Conklin, Ellison, Bigham, Lopez, Cartwright, Mendez, and Martinez (collectively "Appellees") on qualified immunity grounds.[3] Specifically, the district court granted qualified immunity to: (1) Rowe and Hood for Garcia's failure-to-train claim; (2) Conklin and Ellison for his false-arrest and deliberate-indifference claims; and (3) Bigham, Lopez, Cartwright, Mendez, and Martinez for his deliberate-indifference claim. In response, Appellees argue that Garcia has either inadequately briefed the issue of qualified immunity or failed to establish that they are not entitled to qualified immunity. We agree.

Qualified immunity shields a public official "from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). To meet this burden, a plaintiff must plead specific allegations demonstrating: "(1) the violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct." *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018). "A clearly established right is one that is sufficiently

---

[3] Garcia does not appeal the district court's dismissal of Ybarra and Monzingo.

clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

In the failure-to-train context, we have explained that "[t]o establish § 1983 liability against supervisors, the plaintiff must show that: (1) the [supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). Where a failure-to-train claim rests on an alleged pattern that amounts to deliberate indifference by city officials, a plaintiff must show a pattern "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth*, 588 F.3d 838, 852 (5th Cir. 2009) (citation omitted).

i.     *Sergeant Hood & Sheriff Rowe*

The district court initially held that Garcia established a failure-to-train claim against Hood and Rowe. But it granted them qualified immunity because he did not provide any instances of adjudicated liability that would have put Hood or Rowe on notice of constitutionally deficient behavior by their staff. It relied on another district court case in reaching this conclusion. *See Dotson v. Edmonson*, No.16-5371, 2018 WL 501512 (E.D. La. Jan. 22, 2018). Garcia asserts that the district court's reliance on *Dotson* was misplaced and led to an improper extension of qualified immunity. Instead, he avers that the proper inquiry is simply whether he has established "the existence of a pattern of tortious conduct by inadequately trained employees [that] may tend to show . . . the lack of proper training[.]" *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997).

Hood and Rowe make two arguments in response. First, Hood avers that Garcia's brief fails to mention him during its failure-to-train analysis,

thus waiving Garcia's claims against him. Second, they contend that even if Garcia has not waived his claims, he failed to adequately brief qualified immunity. While we agree that Garcia has inadequately briefed this issue as to Hood, we hold that he has done so sufficiently on Rowe.

Beginning with Hood, Garcia has waived any claims he had against him because Garcia's initial brief on appeal fails to mention or include him in its analysis. Garcia includes Hood's name in the heading of his "Supervisory/Liability/Failure to Train" section. But his subsequent analysis never mentions Hood, Hood's conduct, or what connects Hood to Rowe. Thus, Garcia cannot maintain that we should understand him to be analyzing the two individuals together. Because Garcia failed to argue Hood's liability under a failure-to-train theory, he has waived the argument as to Hood. *See Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

Garcia's failure-to-train claim against Rowe remains and warrants reversal of the district court's grant of qualified immunity. The district court misconstrued *Dotson* and, in doing so, distorted Garcia's burden to establish deliberate indifference and defeat qualified immunity. In *Estate of Davis ex rel. McCully v. City of North Richland Hills*, we thoroughly explained a plaintiff's burden when alleging deliberate indifference in the supervisory-liability context:

> To succeed on his claim of failure to train or supervise[,] the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to demonstrate a pattern of violations . . . [that is,] *similar incidents in which the citizens were injured* . . . Moreover, a showing of deliberate indifference requires that the [p]laintiff[] show that the failure to train reflects a

> deliberate or conscious choice to endanger constitutional rights.

406 F.3d 375, 383 (5th Cir. 2005). We have stated that previously adjudicated instances of liability are *helpful* in determining whether a supervisor had notice of unconstitutional behavior by their staff. But we have never gone as far as holding that these instances are *required* for a plaintiff to prevail. *See Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (observing that Davidson provided "no evidence that any of the previous arrests resulted in subsequent litigation," but continuing to analyze the validity of his alleged pattern).

The district court correctly concluded that Garcia established a pattern of constitutionally deficient medical screening practices, thus demonstrating deliberate indifference, and defeating qualified immunity. The only portion of the district court's reasoning that gives us pause is its determination that these deaths satisfy the similarity requirement. *See Davidson*, 848 F.3d at 396 ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents."). While his complaint does not expressly state that the ten deaths occurred in the pretrial detainee process—where his alleged violation happened—we still must construe these deaths in favor of his allegation that they establish "the existence of a pattern of tortious conduct by inadequately trained employees [that] may tend to show . . . the lack of proper training[.]" *Brown*, 520 U.S. at 407; *Littell*, 894 F.3d at 622 (requiring that we view the "facts in the light most favorable to the plaintiffs").

Because Garcia inadequately briefed Hood's liability under a failure-to-train theory, he has waived that claim as to him. But because he sufficiently pleaded a pattern that demonstrates deliberate indifference on behalf of Rowe, we reverse the district court's grant of qualified immunity.

ii.     *Conklin & Ellison*[4]

Garcia asserts, for the first time in his reply brief, that Conklin and Ellison are not entitled to qualified immunity because they believed that he was drunk, and the law clearly establishes that officers may not simply put an intoxicated person with an obvious need for medical attention in a cell to detox. It is likely that this argument is waived because it was not made in his initial brief on appeal. *See Wright v. Excel Paralubes*, 807 F.3d 730, 736 (5th Cir. 2015) ("[T]his court will not consider issues raised for the first time in a reply brief.").

However, assuming arguendo that Garcia has not waived this argument, he has still failed to meet his burden. To prevail on his deliberate-indifference claim, he must show that Conklin and Ellison "kn[e]w of and disregard[ed] an excessive risk" to his safety.[5] *See Garza v. City of Donna*, 922 F.3d 626, 636 (5th Cir. 2019) (holding that establishing civil liability requires a plaintiff to first show "that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference"). For Garcia to make a successful claim, he must plead facts supporting that the officers knew he was intoxicated and disregarded an excessive risk to his safety.

---

[4] Garcia sued Conklin and Ellison for false arrest at the district court, which granted them qualified immunity. He does not pursue this claim on appeal, so he has waived it. *See Roy*, 950 F.3d at 251.

[5] Much has been made about the subjective prong of the deliberate indifference analysis in this court. *See, e.g.*, *Garza*, 922 F.3d at 636 (collecting cases on the subjective requirement). In *Garza*, we clarified that the subjective inquiry in a deliberate indifference analysis focuses on the *knowledge* that a defendant has, not the defendant's intent to cause harm. Thus, we only analyze: (1) what Officers Conklin and Ellison knew when they arrested Garcia and (2) whether they consciously disregarded an excessive risk despite this knowledge.

Here, the record does not support that Conklin or Ellison ever knew that Garcia was intoxicated. For example, the officers asked Garcia how much he had to drink, but he never provided a clear answer. Moreover, as Garcia concedes in his reply brief, the officers could not smell alcohol on him. Thus, they could not have known, without more, that he was drunk or otherwise intoxicated during his arrest. Because the officers were never certain of what ailed Garcia, they could not have "violated [his] clearly established rights with subjective deliberate indifference." *Garza*, 922 F.3d at 636. Therefore, the district court correctly determined that Garcia failed to meet the required burden and that the officers were entitled to qualified immunity.

### iii.    *Bigham, Lopez, Cartwright, Mendez, and Martinez*

Garcia asserts that Bigham, Lopez, Cartwright, Mendez, and Martinez (collectively "the jailors") violated clearly established law from our decisions in *Dyer* and *Thompson v. Upshur County* by failing to get him medical attention during the booking process. *See* 955 F.3d at 506; 245 F.3d 447, 464 (5th Cir. 2001). The district court dismissed the jailors from the suit on two grounds. It first held that Garcia only alleged that the jailors were negligent, which is insufficient to establish deliberate indifference.[6] It then explained that even if it was satisfied with Garcia's pleadings on deliberate indifference, it would still grant the jailors qualified immunity. Consequently, it dismissed the jailors from this suit. We agree.

Here, Garcia does not establish that the jailors' failure to get him medical assistance amounted to deliberate indifference instead of negligence.

---

[6] *See Thompson*, 245 F.3d at 459 (explaining that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm").

He likewise fails to prove that the jailors are not entitled to qualified immunity. He maintains that the jailors' failure to: (1) notice his medical bracelets; (2) check his cell every fifteen minutes; and (3) recognize he was suffering through a diabetic episode amounts to deliberate indifference. However, he provides no legal authority or facts in the record that support overturning the district court's determination that the jailors' conduct was simply negligent. At best, he alleges gross negligence by the jailors. But that is not enough to carry his burden. *See Thompson*, 245 F.3d at 459.

Garcia also reargues that *Dyer* and *Thompson* provide a basis for denying the jailors qualified immunity. But we can only find support in those cases by viewing them at a high level of generality—a task that the Supreme Court has expressly instructed we avoid. *See City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (instructing appellate courts "not to define clearly established law at too high a level of generality"). Viewing these cases narrowly, we hold that the jailors are entitled to qualified immunity.

In *Dyer*, we held that the paramedics were only negligent when they arrived at a scene, observed a victim's "serious head injury" and "LSD-induced behavior," yet still did not provide additional medical care—"such as sending [the victim] to the hospital, accompanying him to jail, providing further assessment or monitoring, or sedating him." *See* 955 F.3d at 506–07 (internal quotations omitted). And in *Thompson* we denied summary judgment on qualified immunity grounds because a question of fact existed as to whether the defendant, Sergeant Whorton, acted with deliberate indifference to a pretrial detainee's self-sabotaging behavior and intoxicated status. *See Thompson*, 245 F.3d at 463–64 (noting that "1) Thompson's blood alcohol level was over 0.3% when he was arrested; 2) Thompson was hallucinating and, at times, speaking incoherently; 3) Thompson was injuring himself in his cell; and 4) Thompson was experiencing [delirium tremens]").

On this record, the jailors did not observe and ignore any serious external injuries to Garcia, like in *Dyer*. Nor did they fail to obtain medical assistance for him after they were certain that it was necessary, like in *Thompson*. Accordingly, even if we held that the jailors' negligence was comparable to deliberate indifference, neither *Dyer* nor *Thompson* provide an adequate basis for denying the jailors qualified immunity because those cases do not establish that the jailors acted objectively unreasonable or violated clearly established law. Therefore, we affirm the district court's dismissal of the jailors.

### 2. *Failure to State a Claim*

#### i. *Maldonado*

The district court dismissed Maldonado from Garcia's suit because he failed to state a claim for deliberate indifference against her. He challenges that determination, arguing that Maldonado violated his Fourteenth Amendment rights by ignoring his obvious need for medical attention throughout the booking process. We are unpersuaded.

Garcia anchors his deliberate-indifference claim against Maldonado on her alleged failure to account for his medical bracelets as she began his booking process at the jail. He avers that she "ignored the medical alert bracelets, ignored the obvious signs of serious medical need, and bypassed medical screening." To him, all of Maldonado's decisions amounted to an intentional decision to avoid "obtain[ing] medical assistance" when he clearly needed it. Maldonado disputes that she ever saw medical bracelets when doing his initial processing into the jail. However, given that we are at the Rule 12(b)(6) stage, we accept his allegation as true in our analysis. *See Littell*, 894 F.3d at 622.

Here, Garcia fails to establish that Maldonado was deliberately indifferent to his medical needs. As the district court aptly explained:

No. 21-11134

> There are few cases—none of which Garcia cites—
> involving the application of deliberate-indifference
> claims to facts involving the removal of medical alert
> bracelets, and none of the cases permits the [district
> court] to indulge Garcia's 'unwarranted factual
> inference' that the alleged presence and removal of
> Garcia's medical bracelets indicates that Maldonado
> actually drew the inference that the failure to promptly
> seek medical treatment for Garcia presented a
> substantial risk of serious harm to him.

One of those few cases grappling with a plaintiff's medical bracelets and the deliberate indifference standard is *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1184 (5th Cir. 1986). In that case, we held that a plaintiff sufficiently alleged facts demonstrating that officers were deliberately indifferent to his deceased son's mental-health condition by disregarding his medical bracelets and placing him alone in a cell where he eventually hanged himself. *Id.* The plaintiff told the officers of his son's mental-health problems and the medical bracelets served to supplement that knowledge. *See id.* We held that the officers' decision to place his son in solitary confinement despite the two medical bracelets indicating "heart and mental" struggles and explanation of those same struggles by the plaintiff amounted to deliberate indifference to the son's psychological needs. *Id.*

*Partridge* provides little support to Garcia's position. To begin with, he does not allege that he ever informed Maldonado of his medical condition. Nor has he pleaded facts that suggest she should have known from the existence of his bracelets that he was suffering from a diabetic episode during the booking process. Furthermore, even if we hold that she was on notice of a potential medical need from Garcia's bracelets, he has still failed to demonstrate that the mere existence of the bracelets created an issue of fact as to a substantial risk of serious harm that she ignored when processing him. *See Dyer*, 955 F.3d at 506. Therefore, he has failed to state a deliberate-

indifference claim against Maldonado and the district court properly dismissed her.

### B.     *The County's Summary Judgment*

Garcia contests the district court's grant of summary judgment on his conditions-of-confinement and ADA claims against the County.[7] We address each in turn.

### 1.     *Conditions of Confinement*

Garcia avers that Rowe's testimony details a de facto policy of leaving intoxicated detainees in detox cells. He contends that the County's failure to medically screen him, provide him with medical treatment, and properly monitor his condition once celled, amounts to a violation of his Fourteenth and Eighth Amendment rights. The district court rejected his assertions, granting summary judgment to the County because he failed to prove the existence of a de facto policy. We agree.

Constitutional claims by pretrial detainees can take two forms: (1) conditions of confinement or (2) episodic acts or omissions.[8] *See Garza*, 922 F.3d at 632. "A condition of confinement case is a constitutional attack on

---

[7] Garcia advanced two more arguments in addition to conditions of confinement and violation of the ADA at the district court: An episodic-acts-or-omissions claim and a failure-to-train claim. He has expressly abandoned his episodic-acts-or-omissions claim. Also, he failed to brief his failure-to-train claim on appeal, so he has waived that argument. *See Roy*, 950 F.3d at 251.

[8] Appellees argue that this case is better characterized as an episodic-acts-or-omissions claim, contending that Garcia incorrectly directs our focus to conditions of confinement. We take no stance on which theory best characterizes Garcia's claims because he advanced both theories before the district court. His decision to only appeal one of those theories is entirely at his discretion. *See Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 464 (5th Cir. 2015) ("[T]here is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately.").

general conditions, practices, rules, or restrictions of pretrial confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (internal quotations and citation omitted). To prevail on this claim, a plaintiff must "prove (1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the detainee's] constitutional rights." *Duvall v. Dallas Cty.*, 631 F.3d 203, 207 (5th Cir. 2011) (first alteration in original) (internal quotations and citations omitted).

We have explained that "[a] formal, written policy is not required to establish a condition or practice." *Montano v. Orange Cty.*, 842 F.3d 865, 875 (5th Cir. 2016). More specifically, we have recognized that sometimes "a condition may reflect an unstated or de facto policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (internal quotations and citation omitted) (alteration in original) (emphasis omitted). Put differently, if the policymakers are aware that officials routinely ignore the governing written policy, that may be evidence of an alternative policy's existence. "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd*, 591 F.3d at 452.

Garcia does not argue that the County had a written policy that created the conditions he purports to sue for in this appeal. Rather, he limits his argument to the existence of a de facto policy that permits booking and processing employees to avoid medically screening intoxicated people. He contends that Rowe's testimony details this alleged de facto policy and proves that skipping medical screenings for intoxicated people was the usual practice for all pretrial detainees in the booking process. He relies on *Montano*

in support of his position. *See* 842 F.3d at 875. This argument is without merit.

Here, Garcia fails to create a genuine dispute of a material fact regarding the existence of an unconstitutional de facto policy in the County's booking process. First, his reliance on *Montano* is misplaced. In that case, we held that Orange County had an unconstitutional de facto policy of leaving pretrial detainees in cells to detox "for as long as it t[ook]" the detainee to sober up. *Montano*, 842 F.3d at 875. That Orange County left detainees in detox cells was not the primary issue—in fact, there was a written policy permitting to place intoxicated detainees in these cells. Rather, the issue was whether the jail staffs' practices adhered to the written policy—we concluded that it did not. We reached this determination after analyzing extensive testimony from the jailors, who testified to leaving detainees in detox cells for days at a time, despite the existence of a written policy prohibiting doing so. *Id.* at 875–76 (observing that "[t]he county's *de facto* policy is even at odds with its own written policy . . . [which] provides [that] corrections staff should attempt to use a guideline of four to eight hours for detoxification" (internal quotations omitted)).

Garcia asserts that the County's de facto policy of leaving detainees in cells until they detox is, by itself, a violation sufficient for holding in his favor. But his understanding fundamentally misconstrues what we considered and held in *Montano*. There, Orange County's written policy permitted holding pretrial detainees in detox cells for "four-to-eight hours." *Id.* at 875. We never declared that policy unconstitutional. Instead, we recognized that Orange County's employees adhered to a different policy—one where officers left detainees in detox cells for days at a time. We explained that this unconstitutional practice supplanted the written policy. Applied here, *Montano* cannot be Garcia's only basis for a constitutional violation because,

despite his assertions to the contrary, that case does not prohibit the County from using detox cells for short durations. *See id.*

Even if we accept that Garcia is correct about the County's practice of using cells to hold detainees until they detox, he has not pleaded that he was detained for a constitutionally deficient amount of time. *See id.* at 875. Ultimately, our decision in *Montano* does not bar the use of detox cells entirely, but merely acknowledges that a stopping point for detaining intoxicated persons exists. Garcia spent three hours in the County's detox cell—an amount of time we did not hold unacceptable in *Montano. See id.*

Garcia's reliance on Rowe's testimony is similarly unpersuasive. True, Rowe commented on whether other intoxicated detainees were held in a cell to sober up before processing, and even admitted that its occurrence was not "abnormal." But that hardly meets the heavy burden of proof that Garcia carries here. Ultimately, all Rowe admitted is that "there have been some instances" where pretrial detainees have been taken directly to a holding cell, and that "under some circumstances" it was necessary to place them in jail cells prior to booking and processing. A vague string of one-off occurrences is not indicative of the County's practice for all pretrial detainees.

Garcia also failed to acknowledge that Rowe testified that he did not receive medical treatment, *at his own request*. The County provided a Jail Incident Report which stated that Officer Cartwright asked "Garcia if he wanted to speak to Medical Staff and he stated, [n]o." He cannot maintain that he was the victim of an unconstitutional practice when there is an independent, constitutional basis for his not receiving medical attention before he was discovered in critical condition in his cell. Because Garcia failed to prove that there is a genuine dispute of a material fact regarding the

constitutionality of the County's pretrial detention policies and practices, we affirm the district court's grant of summary judgment.

### 2. *ADA Violations*

Garcia makes two ADA claims: (1) that the County failed to accommodate his disability and (2) that it discriminated against him because of his disability. Regarding his latter argument, he asserts that his condition was the cause of the County's decision to not provide him a medical evaluation or screening. The district court rejected his contentions, granting summary judgment to the County because he failed to provide evidence that the County ever knew of his medical condition. We see no error in its decision.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132. To make a prima facie case under the ADA, a plaintiff must demonstrate: (1) "that he is a qualified individual within the meaning of the ADA"; (2) "that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) "that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Windham v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017) (internal quotations and citation omitted).

A failure-to-accommodate claim requires a plaintiff to prove that: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (internal citation omitted). "To satisfy the

knowledge requirement, the entity must understand the limitations a plaintiff experience[s] *as a result* of his disability." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (emphasis in original). Additionally, we have explained that the "burden falls on the plaintiff to identify the disability, the limitations, and to request an accommodation in direct and specific terms." *Id.* (citation omitted). Where a plaintiff fails to meet his burden, he may only prevail by showing that his "disability, resulting limitations, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (citing *Windham*, 875 F.3d at 237) (internal quotations omitted).

Garcia dedicates much of his brief to the first element—that diabetes qualifies as a disability under the ADA. The County does not refute that element and instead argues that its employees never knew that he suffered from diabetes. It avers that because it never knew of his disability, it could not have discriminated against him on the basis that he was disabled or provided accommodations. In response, Garcia asserts that his disability was open, obvious, and apparent because of his inability to walk or communicate. He maintains that because his limitations were known, his need for accommodations was readily apparent. We disagree.

Here, Garcia fails to provide sufficient evidence to avoid summary judgment on his ADA claims. His Title II and failure-to-accommodate claims share a common element: the County's knowledge of his disability. Garcia points to no evidence suggesting that the County knew of his disability, used it to discriminate against him, or failed to accommodate him. Instead, he makes conclusory statements about the County's alleged knowledge of his diabetic condition. But each statement is easily dispelled after considering the record. For example, he relies on the existence of his medical bracelets, but fails to prove that the bracelets alerted anyone to his diabetic condition, or even that they would have suggested a medical condition at all. Moreover, the record establishes the officers' confusion about whether he was drunk or

suffering from a medical condition.[9] Absent proof that someone from the County had knowledge of his disability, he cannot establish that they discriminated against him because of it or failed to accommodate him.

Likewise, Garcia's contention that his condition at arrest and throughout the booking process made his disability open, obvious, and apparent is unpersuasive. We have explained that the open-and-obvious exception is "narrow." *Windham*, 875 F.3d at 239. Garcia cites no authority to support application of this exception, but a brief survey of our precedent confirms its inapplicability. Consider our decision in *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 575–76 (5th Cir. 2002). There, we upheld a jury's finding of disability discrimination when two officers arrested a deaf person, Pyle. *Id.* Notably, we did not apply the open-and-obvious exception simply because he was deaf. We, instead, applied the exception because the officers testified to communicating his rights and other commands orally while being aware of his hearing impediment. *Id.* In fact, one of the officers stated that he "knew [Pyle] had a hearing problem," yet continued only communicating with him through oral instructions. *Id.* Simply put, the officers' attempts to communicate critical rights to someone they understood to be deaf plainly violated the ADA.

Unlike in *Delano-Pyle*, the record shows that none of the officers ever believed or understood Garcia's symptoms to stem from diabetes or any other ADA-approved disability. Furthermore, his outwardly visible mannerisms did not suggest that he suffered from the type of disability that

---

[9] Garcia cannot deny the officers' confusion because he relies on it at various times throughout his briefing on appeal. For example, his deliberate-indifference claims against numerous officers and the jailors hinge on the fact that these defendants made a deliberate choice to put someone *either* suffering from a medical condition or intoxicated in a cell to detox for a lengthy period.

would put an officer on notice to accommodate him. *See Windham*, 875 F.3d at 238 (providing that "blindness, deafness [with a hearing aid], or being wheelchair-bound" are "well-understood" examples of open-and-obvious disabilities). Because he fails to identify evidence that the County knew of his diabetic status and because his disability was not open and obvious, we affirm the district court's summary judgment.

## IV.  Conclusion

For the foregoing reasons, we REVERSE the district court's dismissal of Rowe and AFFIRM its judgment dismissing the remaining Appellees and granting summary judgment to the County.